IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SALLY DANESHJOU, | § § | |
| Plaintiff, | § § | |
| v. | § § | 1:23-CV-245-RP |
| JPMORGAN CHASE BANK, N.A., | § § § | |
| Defendant. | § § | |

**ORDER**

Before the Court is Defendant JPMorgan Chase Bank, N.A.'s ("Chase") motion for summary judgment, (Dkt. 41). Plaintiff Sally Daneshjou ("Sally") filed a response in opposition, (Dkt. 45), and Chase filed a reply, (Dkt. 46). Also before the Court is third-party Benny Daneshjou's ("Benny") plea in intervention, (Dkt. 47); Benny's motion to join in the case, (Dkt. 49); and various other motions or filings by Benny, (Dkts. 55–59, 61, 63). In response to Benny's filings, Chase filed a motion to strike the plea in intervention, (Dkt. 48); a response in opposition to Benny's motion to join, (Dkt. 52); and a motion to strike Benny's other filings, (Dkt. 60). Having considered the parties' briefs, the record, and the relevant law, the Court denies Benny's motion to intervene in this case, strikes his improperly filed pleadings, and grants Chase's motion for summary judgment.

**I. BACKGROUND**

Plaintiff Sally Daneshjou—without her spouse Benny Daneshjou—brings this case to stop Chase's foreclosure on her home (the "Property").[1] In 2018, Benny—without Sally—sued to stop Chase from foreclosing on the Property. *Daneshjou v. JPMorgan Chase Bank, N.A.*, No. 1:18-CV-688-

---

[1] The Property at issue is described as
> LOT 7, BLOCK E, BARTON CREEK SECTION G, PHASE 2, A SUBDIVISION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT RECORDED IN VOLUME 96, PAGE 260-263 OF PLAT RECORDS OF TRAVIS COUNTY, TEXAS.

The Property is located at 2300 Portofino Ridge Dr., Austin, Texas 78735.

1

RP (W.D. Tex. removed Aug. 15, 2018) ("*Daneshjou I*"). The Court recounts the relevant facts in this case as presented in United States Magistrate Judge Mark Lane's previous report and recommendation in the instant action. (*See* R. & R., Dkt. 17, at 1–3; *see also* Order, Dkt. 20 (adopting the report and recommendation)).

Benny and Sally refinanced their home in April 2003 through a loan from Washington Mutual. Only Sally signed the note. On September 25, 2008, Washington Mutual was placed into receivership, and the Federal Deposit Insurance Corporation ("FDIC") was appointed as the receiver. That same day, Chase purchased substantially all of Washington Mutual's assets and liabilities. Since then, Chase has claimed to service the mortgage for the loan from Washington Mutual, and the Daneshjous allegedly made payments on that loan until summer 2017. In January 2017, Benny deferred his property taxes. Chase paid them, then sought payment from the Daneshjous. In July 2018, Chase accelerated the loan and gave the Daneshjous notice of foreclosure.

Before a foreclosure sale could occur, Benny filed for a temporary restraining order in state court (*Daneshjou I*), which the state court granted. Chase removed the case to this Court, then filed a Rule 12(b)(6) motion to dismiss. Benny amended his complaint, asserting claims for quiet title and anticipatory breach of contract and seeking declaratory relief. Chase then filed another Rule 12(b)(6) motion to dismiss.

The basis for Benny's quiet-title claim was that the deed of trust secured payment of a note "signed by Borrower" and defined that term as both Sally and Benny Daneshjou, but only Sally actually signed the note Chase produced. According to Benny, a valid note therefore did not exist, and the deed of trust is unenforceable. Similarly, Benny alleged under his anticipatory-breach-of contract claim that the deed of trust authorizes the power of sale for default of a nonexistent note, not the note signed only by Sally. On May 2, 2019, this Court found that the note signed only by Sally was the note secured by the deed of trust. The Court rejected both of Benny's theories and

2

granted Chase's motion to dismiss. *See Daneshjou I*, No. 1:18-CV-688-RP (W.D. Tex. May 2, 2019), Dkt. 30. The Court also denied Benny leave to amend because "his allegations are so implausible as to suggest that his lawsuit is motivated not by a good-faith belief that he is entitled to relief, but rather by a dilatory motive to delay the foreclosure of his home." *Id.* at 9–10. The Fifth Circuit affirmed in 2020. *Daneshjou I*, No. 1:18-CV-688-RP (W.D. Tex. July 1, 2020), Dkt. 34.

In February 2023, Sally initiated this case by filing an original petition in state court. (Dkt. 1–1, at 6–19). Chase removed the case to this Court on March 6, 2023. (Dkt. 1). Shortly thereafter, Chase filed a motion to dismiss. (Dkt. 4). Sally then filed her first amended complaint, (Dkt. 7), prompting the Court to moot Chase's first motion to dismiss, (*see* Text Order dated Apr. 13, 2023).

In her first amended complaint, Sally asserted claims for breach of contract, fraud, usury, to remove cloud and quiet title, and for declaratory judgment. Sally asserted that Chase breached the loan agreement and committed usury when it changed the ongoing payment plan after the Daneshjous refused to pay Chase for the property taxes it had paid on the Daneshjous' behalf. (Am. Compl., Dkt. 7, ¶¶ 44, 46). Referring back to the entire factual recitation of her amended complaint, Sally alleged Chase committed fraud. (*Id.* ¶ 45.) In her quiet title claim, Sally asserted that the deed of trust identifies the Property as collateral to a note signed by both Sally and Benny, but no such note exists. (*Id.*). Sally also sought a declaratory judgment that: (1) the deed of trust does not secure payment of the Note; (2) the Note described in the deed of trust does not exist; (3) a nonexistent note cannot be defaulted, accelerated, or foreclosed upon; (4) Chase cannot foreclose the Property based on the deed of trust and Note; and (5) Chase abandoned any prior acceleration on July 10, 2018. (*Id.* ¶ 49). Sally also brought a constructive fraud claim, in which she asserted that Chase pretended to offer programs to reinstate the Note without intending to follow through on them. (*Id.* ¶ 50).

Chase filed another motion to dismiss, moving to dismiss all the claims in Sally's first amended complaint, except the claim that Chase abandoned the prior acceleration and therefore cannot foreclose. (Dkt. 9). The Court referred the motion to dismiss to United States Magistrate Judge Mark Lane. (*See* Text Order dated Aug. 22, 2023). On October 17, 2023, Judge Lane issued a report and recommendation in which he recommended that this Court grant Chase's motion to dismiss. (R. & R., Dkt. 17, at 7). Judge Lane found that Sally's claim to quiet title, breach of contract claim, usury claim, and four of her five claims for declaratory judgment were barred by res judicata in light of the judgment in *Daneshjou I*. (*Id.* at 6). Judge Lane also found that any claim based on conduct that occurred before February 21, 2019, was barred by the statute of limitations. (*Id.* at 7). On November 21, 2023, this Court issued an order adopting the report and recommendation and granting Chase's motion to dismiss. (Order, Dkt. 20). The Court dismissed all of Sally's claims with prejudice, except her declaratory judgment claim that Chase cannot foreclose because it abandoned its prior acceleration. (*Id.*).

On March 22, 2024, Sally filed a motion for leave to file a second amended complaint. (Dkt. 27). On June 11, 2024, the Court denied the motion, finding that Sally had filed the motion "with a dilatory motive, to cause undue delay, and to prejudice Chase." (Order, Dkt. 42, at 7). In the Order, the Court recounted how the motion for leave to amend came five and a half years after *Daneshjou I* was initiated and thirteen months after the current lawsuit was filed. (*Id.*). The Court found that Sally "had plenty of opportunities to plead her best case that have yet to be meritorious," and thus, on "the basis of undue delay and prejudice alone" the motion to amend should be denied. (*Id.*). The Court also separately found that amendment would be futile because Sally had failed to state a claim in the three new causes of action that Sally wished to assert. (*Id.* at 7–10).

While the motion for leave to amend was pending, Sally also filed a motion for a temporary restraining order ("TRO"), in which she sought an injunction to stop Chase from foreclosing on her

4

home on June 4, 2024. (Dkt. 36). In the motion for a TRO, Sally argued that Chase's foreclosure was barred by the statute of limitations because Chase accelerated the debt in 2018 and did not abandon this acceleration before the four-year statute of limitations expired. (*Id.*). The Court held a hearing on the motion for a TRO on June 3, 2024. (Minute Entry, Dkt. 40). At the hearing, the Court found that Sally had not demonstrated that there was a substantial likelihood that she would succeed on the merits of this claim. Therefore, the Court denied the motion for a TRO. (*See* Order, Dkt. 39).

On June 7, 2024, Chase filed the instant motion for summary judgment. (Dkt. 41). Chase argues that it is entitled to summary judgment on Sally's sole remaining claim—her request for a declaration that the four-year statute of limitation following acceleration bars foreclosure on the Property. (*Id.* at 2). Sally filed a response in opposition, (Dkt. 45), and Chase replied, (Dkt. 46).

More than two months later, in mid-August 2024, Benny, proceeding *pro se*, filed a plea in intervention onto the docket, without seeking leave of the Court, in which he objects to Chase's motion for summary judgment. (Dkt. 47). Chase then filed a motion to strike Benny's plea in intervention. (Dkt. 48). In response, Benny filed a motion for leave to join in the case, file complaints, and file objections to Chase's motion to strike, (Dkt. 49), to which Chase responded, (Dkt. 52), and Benny replied, (Dkt. 54). While the motion for leave was pending, Benny then proceeded to file multiple filings onto the docket—a motion for discovery, a motion to unseal filings, an amended complaint, further objections to Chase's motion for summary judgment, additional exhibits to his plea in intervention, an exhibit list, and a motion to stay the foreclosure sale, (*see* Dkts. 55–59, 61, 63)—all without seeking leave of the Court. In response to these filings, Chase has filed a second motion to strike on the basis that Benny has not been granted leave to intervene as a party in this lawsuit. (Dkt. 60). Benny responded in opposition to Chase's second motion to strike. (Dkt. 62).

5

## II. INTERVENTION

The Court first addresses Benny's motion to join in this case and Chase's motions to strike Benny's plea in intervention and his other filings. Chase argues that the Court should strike Benny's plea in intervention because Benny did not seek leave prior to filing the plea, the plea is untimely, and Sally and her counsel adequately represent Benny's interests in this case. (Dkt. 48, at 2). To begin, Benny's plea in intervention was improperly filed. A motion to leave is required to intervene under Federal Rule of Civil Procedure 24. *See* Fed. R. Civ. P. 24(a) ("On timely motion . . ."); *Rotstain v. Mendez*, 986 F.3d 931, 937 (5th Cir. 2021). Benny did not seek leave before he filed his plea in intervention, and therefore Benny should not have filed it. However, because Benny sought leave to intervene after filing his plea, the Court will consider Benny's motion to intervene on the merits.

Benny's plea in intervention and his motion to intervene make an array of arguments, at times referencing the requirements for intervention as of right under Federal Rule of Civil Procedure 24(a). (*See, e.g.*, Dkt. 49, at 6–9). Benny never explicitly moves for permissive intervention, but the Court will liberally construe his filings to include such a request. *See Grant v. Cuellar*, 59 F.3d 524, 524 (5th Cir. 1995) (discussing how courts "liberally construe briefs of pro se litigants"). As such, the Court will consider whether to allow Benny to intervene as of right or permissively.

### A. Intervention by Right

Intervention by right is governed by Federal Rule of Civil Procedure 24(a). To intervene by right, the prospective intervenor either must be "given an unconditional right to intervene by a federal statute," Fed. R. Civ. P. 24(a)(1), or must meet each of the four requirements of Rule 24(a)(2):

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

6

*Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015). "Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed." *Id.* "Federal courts should allow intervention where no one would be hurt and the greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir.1994) (internal quotation marks omitted). The movant bears the burden to prove entitlement to intervene; failure to prove a required element is fatal. *Rotstain*, 986 F.3d at 938. Here, Benny does not meet the first and fourth prongs under Rule 24(a)(2).

1. Timeliness

Under the first prong, Benny's motion is untimely. The Fifth Circuit has identified four factors, sometimes referred to as the *Stallworth* factors, to determine whether a motion to intervene is timely: the length of time the movant waited to file, the prejudice to the existing parties from any delay, the prejudice to the movant if the intervention is denied, and any unusual circumstances. *Id.* (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir. 1977)). Consideration of each of the factors demonstrate that Benny's attempted intervention is not timely.

The first timeliness factor is "[t]he length of time during which the would-be intervenor actually [knew] or reasonably should have known of his interest in the case before he petitioned for leave to intervene." *Rotstain*, 986 F.3d at 938 (quoting *Stallworth*, 558 F. 2d at 264). As explained above, this case is mostly a regurgitation of *Daneshjou I* except brought by Sally instead of Benny because Benny lost *Daneshjou I*. Benny appears to have made a strategic decision not to be a litigant in this case at the start but now that there have been multiple adverse rulings against Sally, Benny wants to intervene to relitigate issues already decided by this Court in an attempt to oppose Chase's motion for summary judgment. Benny knew of his interests in this case since Sally filed it in February 2022—eighteen months before he sought to intervene. A delay of 18 months weighs against timeliness. *Rotstain*, 986 F.3d at 938 (delay of 18 months was "significant" and district court did not abuse its discretion determining delay of that length weighed against timeliness).

The second factor in evaluating timeliness is "[t]he extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case." *Rotstain*, 986 F.3d at 938 (quoting *Stallworth*, 558 F. 2d at 265). This factor is the "most important consideration." *Id.* (quotation omitted). Chase would suffer obvious prejudice if Benny were allowed to intervene at this late stage of the litigation. Five of Sally's claims have already been dismissed, and only one claim remains. All deadlines in the scheduling order have expired except the November 12, 2024, trial setting. (*See* Dkt. 24). Benny's attempts to relitigate issues that were already decided in *Daneshjou I* and at the motion to dismiss stage in this litigation would waste both the Court and Chase's resources. Benny's intervention would plainly cause delay, which the Court surmises was his intention in waiting this long to seek intervention. Because Benny's intervention would prejudice Chase and delay final judgment, this factor also weighs against timeliness.

The third timeliness factor is "[t]he extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied." *Rotstain*, 986 F.3d at 939 (quoting *Stallworth*, 558 F. 2d at 265). The critical component of this factor "is adequacy of representation. If the proposed intervenors' interests are adequately represented, then the prejudice from keeping them out will be slight." *Rotstain*, 986 F.3d at 939 (quoting *Lelsz v. Kavanagh*, 710 F.2d 1040, 1046 (5th Cir. 1983)). Benny would not suffer prejudice if he cannot intervene in this case because he already litigated and lost these claims in *Daneshjou I*. Further, his interests in this case are adequately represented by Sally and her counsel. Spouses Benny and Sally are aligned—their collective interest is delaying the foreclosure sale of the Property. Indeed, this Court has already determined that Benny and Sally are in privity. (*See* R. & R., Dkt. 17, at 6; Order, Dkt. 20 (adopting report and recommendation)). Therefore, the third factor weighs against timeliness.

8

The last timeliness factor is "[t]he existence of unusual circumstances militating either for or against a determination that the application is timely." *Rotstain*, 986 F.3d at 941 (quoting *Stallworth*, 558 F. 2d at 266). The unusual circumstances here are that Benny seeks to intervene as a *pro se* litigant: (1) after he litigated and lost *Daneshjou I*; (2) after adverse rulings against Sally in this litigation, including the denial of a motion for a TRO to prevent a scheduled foreclosure sale; and (3) with the intent to cause delay and increase costs for the litigants while he continues to have the use and possession of the Property without making payments. These unusual circumstances weigh against timeliness.

Balancing all the timeliness factors, it is clear that Benny's attempted intervention is untimely. Accordingly, he has failed to satisfy the first requirement under Rule 24(a)(2), and his request for intervention as of right must be denied on that basis alone.

## 2. Adequate Representation

The Court also finds that Benny has not met the standard to prove intervention as of right because he has failed to satisfy the fourth requirement under Rule 24(a)(2). A proposed intervenor must prove that his interests are inadequately represented by the existing parties to the suit. Fed. R. Civ. P. 24(a)(2); *Rotstain*, 986 F.3d at 936–37. However here, as stated above, Benny's interests in this case are adequately represented by Sally and her counsel because they share an aligned interest in delaying the foreclosure of their home and because they are in privity as spouses. Benny's adequate representation in this suit, thus, constitutes a separate reason to deny him intervention as of right.

### B. Permissive Intervention

The Court next considers whether to grant Benny permissive intervention into this case. Rule 24(b) states: "On timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Permissive intervention "is wholly discretionary

9

with the district court . . . even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 470–71 (5th Cir. 1984) (quoting Wright & Miller, Federal Practice and Procedure: Civil § 1913 at 551) (cleaned up). Permissive intervention depends, in part, on "whether the intervenors' interests are adequately represented by other parties and whether they will significantly contribute to full development of the underlying factual issues in the suit." *Id.* at 472.

The Court declines to grant Benny permissive intervention for several reasons. First, to allow permissive intervention, a movant must file a "timely motion," Fed. R. Civ. P. 24(b), and the Court has already found Benny's plea in intervention to be untimely. Second, as discussed, Benny's interests are already adequately represented in this lawsuit. Last, the Court's discretion is not warranted here where Benny's intervention would do nothing more than delay judgment in this case after Benny and Sally have had plenty of opportunities to present their legal arguments. This Court will not allow Benny to continue to waste this Court's and Chase's resources in delaying this case any further. Accordingly, in its discretion, the Court declines to let Benny intervene permissively in this case.

### C. Conclusion

Having found that neither intervention as of right nor permissive intervention is warranted in this case, the Court denies Benny's motion for leave to intervene, file complaints, and respond to Chase's motion for summary judgment. (Dkt. 49). The Court also grants Chase's motion to strike Benny's plea in intervention, (Dkt. 47). Further, the Court will grant Chase's motion to strike every motion and filing that Benny improperly filed while his motion to intervene was pending, (*see* Dkts. 55–59, 61, 63). The Court will now proceed to consider Chase's motion for summary judgment on the merits, according to the arguments and evidence that only Chase and Sally provided in their briefs.

### III. SUMMARY JUDGMENT

#### A. Legal Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he moving party may [also] meet its burden by simply pointing to an absence of evidence to support the nonmoving party's case." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544 (5th Cir. 2005). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000). Courts must view the summary judgment evidence in the light most favorable to the nonmovant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

#### B. Undisputed Material Facts

The Court begins its analysis of Chase's motion for summary judgment by discussing the undisputed material facts that are in the record. On April 25, 2003, Sally executed a Fixed/Adjustable Rate Note payable to Washington Mutual Bank, FA in the original principal

11

amount of $2,439,000 (the "Note"). (Dkt. 41-3). Also on April 25, 2003, Sally and Benny executed the Deed of Trust to secure payment of the Note (the "Deed of Trust") with a lien against the Property. (Dkt. 41-8). The Note and the Deed of Trust together are referred to as the "Loan."

On or about September 25, 2008, the FDIC, acting as receiver for Washington Mutual, transferred the Deed of Trust to Chase. (Dkt. 41-2, ¶ 7). On January 22, 2018, a Corporate Assignment of Deed of Trust (the "Assignment") memorializing the transfer was filed in the Official Public Records of Travis County, Texas. (Dkt. 41-5). According to Chase's records, Sally, the sole signatory on the Note, is the only debtor obligated to pay the debt. (Dkt. 41-2, ¶ 4).

In 2017, Sally defaulted on the Loan by failing to make monthly payments when due. (*Id.* ¶ 12). On December 8, 2017, Chase sent Sally an Acceleration Warning notice advising that the Loan was in default due to nonpayment, demanding the amounts past due to cure the default, and advising that, if the default was not cured within thirty-five days, Chase would accelerate the maturity of the Loan and declare all sums immediately due and payable (the "2017 Acceleration Warning"). (Dkt. 41-6, ¶¶ 2–4).

On July 10, 2018, Chase, through its foreclosure counsel, McCarthy & Holthus, LLP ("McCarthy"), sent Sally notice that the maturity of the debt was accelerated, and the Property was scheduled for foreclosure on August 7, 2018. (Dkt. 41-10). On August 6, 2018, one day before the scheduled sale, Benny filed a lawsuit in Travis County district court against Chase seeking to enjoin the scheduled foreclosure sale and void the Deed of Trust. (*See* Dkt. 41-15, at 12–16). A sale did not proceed as scheduled in August 2018. Benny's lawsuit was removed to this Court, where, as recounted above, it was dismissed on May 2, 2019. (*Id.*). Benny appealed the Court's judgment, and, on July 1, 2020, the Fifth Circuit Court of Appeals affirmed the judgment dismissing his claims. (*Id.*).

Shortly after Benny's lawsuit was dismissed, on June 12, 2019, Chase sent Sally an Acceleration Warning notice advising that the Loan was in default due to nonpayment, demanding

12

the amounts past due to cure the default, and advising that, if the default was not cured by July 17, 2019, Chase would accelerate the maturity of the Loan and declare all sums immediately due and payable (the "2019 Acceleration Warning"). (Dkt. 41-7, ¶¶ 2–4). On January 22, 2020, Chase sent Plaintiff another Acceleration Warning notice advising that the Loan was in default due to nonpayment, demanding the amounts past due to cure the default, and advising that, if the default was not cured by February 26, 2020, Chase would accelerate the maturity of the Loan and declare all sums immediately due and payable (the "2020 Acceleration Warning"). (Dkt. 41-8, ¶¶ 2–4).

Chase then sent Sally three notices that it was accelerating the maturity of the debt. On February 27, 2020, Chase, through its foreclosure counsel, McCarthy, sent Sally notice that the maturity of the debt was accelerated, and the Property was scheduled for foreclosure on April 7, 2020. (Dkt. 41-11). This sale, however, did not proceed as scheduled. On December 10, 2021, Chase again sent Sally notice that the maturity of the debt was accelerated, and the Property was scheduled for foreclosure on January 4, 2022. (Dkt. 41-12). This sale also did not proceed as scheduled. Once again, on August 22, 2022, Chase sent Sally notice that the maturity of the debt was accelerated, and the Property was scheduled for foreclosure on October 4, 2022. (Dkt. 41-13). This sale also did not occur.

On the day of the October 4, 2022, scheduled sale, Benny filed for chapter 13 bankruptcy protection in the United States Bankruptcy Court for the Western District of Texas, Austin Division, which was assigned case number 22-10656. (Dkt. 41-15, at 18–26). On January 12, 2023, the Bankruptcy Court denied confirmation of a proposed chapter 13 plan for failure to make payments and dismissed the case. (*Id.*).

Shortly thereafter, on January 30, 2023, Chase sent Sally yet another notice that the maturity of the debt was accelerated, and the Property was scheduled for foreclosure on March 7, 2023. (Dkt. 41-14). On the day of the March 7, 2023, scheduled sale, Benny filed a second bankruptcy case in

13

the United States Bankruptcy Court for the Western District of Texas, Austin Division, which was assigned case number 23-10142. (Dkt. 41-15, at 27–38). On December 14, 2023, the Bankruptcy Court dismissed Benny's second bankruptcy. (*Id.*). On December 19, 2023, Chase, through its counsel, sent Sally notice by first class and certified mail that Chase rescinded and waived any acceleration of the Note, or any other debt secured by the Deed of Trust that occurred before December 19, 2023. (Dkt. 41-15, at 3, 6–7).

### C. Discussion

Sally's sole remaining claim in this case is a request for declaratory relief. She requests a declaration that the four-year statute of limitations following acceleration of the debt bars foreclosure. (*See* Am. Compl., Dkt. 7, ¶ 49). In its motion, Chase argues that it is entitled to summary judgment on this claim because the summary judgment evidence establishes that the statute of limitations does not bar enforcement of the Deed of Trust. (Mot., Dkt. 41, at 10).

Under Texas law, a secured lender "must bring suit for . . . the foreclosure of a real property lien not later than four years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code § 16.035(a). If foreclosure does not occur within this limitations period, "the real property lien and a power of sale to enforce the . . . lien become void." *Id.* § 16.035(d). Where a lender has the option to accelerate a debt secured by real property, a cause of action for foreclosure accrues "when the holder actually exercises its option to accelerate." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001).

"The acceleration may be abandoned, either by the lender's unilateral actions or by agreement, thereby suspending the limitations period until the lender exercises its option to re-accelerate the note." *See, e.g., Jatera Corp. v. US Bank Nat'l Ass'n as Tr. for Registered Holders of Citigroup Mortg. Loan Tr.*, 917 F.3d 831, 835 (5th Cir. 2019) (citing *Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 106 (5th Cir. 2015)). "It has been the law of Texas at least since 1901 that the parties can abandon

14

acceleration and restore the contract to its original terms by the parties' agreement or actions." *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 356 (Tex. App.—Houston [1st Dist.] 2012, no pet.). If an acceleration is abandoned before the limitations period expires, "the note's original maturity date is restored and the noteholder is no longer required to foreclose within four years from the date of acceleration." *Leonard v. Ocwen Loan Servicing, L.L.C.*, 616 Fed. App'x 677, 679 (5th Cir. 2015); *Alcala v. Deutsche Bank Nat'l Tr. Co. for Long Beach Mortg. Loan Tr. 2006-5*, 684 F. App'x 436, 439 (5th Cir. 2017); *see also Khan*, 371 S.W.3d at 356.

Abandonment of a prior acceleration is established as a matter of law where the lender sent a letter that: (1) demanded payment of only the past due amounts and not the full accelerated amount; and (2) stated that, if the borrower failed to pay the demanded amount, then the maturity date of the note would be accelerated. *See Citibank N.A. as Tr. for NRZ Pass-Through Tr. VI v. Pechua, Inc.*, 624 S.W.3d 633, 640–41 (Tex. App.—Houston [14th Dist.] 2021, pet. denied), reh'g denied (May 18, 2021); *Pitts v. Bank of New York Mellon Tr. Co.*, 583 S.W.3d 258, 264 (Tex. App.—Dallas 2018, no pet.) (collecting cases). Such letters "unequivocally manifest" an intention to abandon the prior acceleration. *Boren*, 807 F.3d at 106. Such letters are "replete with language inconsistent with the then-present right to foreclose" and "compel[] the conclusion that the lender abandoned the acceleration." *NSL Prop. Holdings, LLC v. Nationstar Mortg., LLC*, 02-16-00397-CV, 2017 WL 3526354, at *4-5 (Tex. App.—Fort Worth Aug. 17, 2017, pet. denied); *see also Davis v. Ocwen Loan Servicing, L.L.C.*, 855 Fed. App'x 907, 911 (5th Cir. 2021) (holding that a new notice of intent to accelerate coupled with a later acceleration establishes the lender's abandonment of a prior acceleration as a matter of law) (quoting *Martin v. Federal Nat. Mortg. Ass'n*, 814 F.3d 315, 318 (5th Cir. 2016)).

A lender may also unilaterally rescind or waive acceleration and reset the limitations period by serving a written notice of a rescission or waiver on each debtor who, according to the records of

the lienholder or the servicer of the debt, is obligated to pay the debt by first class or certified mail. Tex. Civ. Prac. & Rem. Code § 16.038(b)-(c); *see also Boren*, 807 F.3d at 106.

Here, Sally argues that the statute of limitations to foreclose expired because the Note was accelerated on July 10, 2018, and that this acceleration was not abandoned until December 2023—a year and half after the four year statute of limitation ran on the acceleration. (*See* Am. Compl., Dkt. 7, ¶ 49; Resp., Dkt. 45, at 3). On the other hand, Chase argues that its notices on June 12, 2019, and January 22, 2020, constituted abandonment of the July 10, 2018, acceleration. Accordingly, so Chase argues, Sally cannot establish that the statute of limitations bars enforcement of the Deed of Trust, and Chase is entitled to summary judgment on Sally's remaining claim for declaratory relief. (Mot., Dkt. 41, at 8–9). In response, Sally argues that there is a fact issue over whether Chase's 2019 and 2020 Acceleration Warnings met the requirements for abandonment under Texas law. (Resp., Dkt. 45, at 3–4).

The Court agrees with Chase: The 2019 and 2020 Acceleration Warnings establish that Chase abandoned and waived any acceleration since June 12, 2015—including the July 10, 2018, acceleration—before the four-year statute of limitations expired. In both the 2019 and 2020 notices, Chase demanded payment of only the past due amounts and not the full accelerated amount and notified Sally that, if she failed to pay the amount demanded, then the maturity of the Note would be accelerated—demonstrating Chase previously abandoned and waived the July 10, 2018, acceleration. (*See* Dkt. 41-7, ¶¶ 2–4; Dkt. 41-8, ¶¶ 2–4). Chase's demand for payment of less than the full obligation after the July 10, 2018, acceleration is an unequivocal expression of Chase's intent to abandon or waive its initial acceleration. *Jatera Corp*, 917 F.3d at 835 (citing *Martin*, 814 F.3d at 318). Thus, the 2019 Acceleration Warning demonstrates that Chase abandoned and waived the July 10, 2018, acceleration by June 12, 2019. The 2020 Acceleration Warning likewise demonstrates that Chase abandoned and waived the June 10, 2018, acceleration by January 22, 2020.

16

After Sally failed to pay the amounts demanded in the 2020 Acceleration Warning by February 26, 2020, on February 27, 2020, Chase sent Sally a letter stating that Chase had accelerated the maturity of the Note, just as Chase had warned it would do if Sally had failed to cure the Loan's default. (Dkt. 41-11). Chase's February 27, 2020, acceleration notice further confirms that the 2019 and 2020 Acceleration Warnings abandoned and waived the July 10, 2018, acceleration. *See Davis*, 855 Fed. App'x at 911 (holding that a new notice of intent to accelerate coupled with a later acceleration abandoned prior acceleration as a matter of law) (quoting *Martin*, 814 F.3d at 318). Because the summary-judgment evidence proves Chase abandoned and waived the July 10, 2018, acceleration within four years, the July 10, 2018, acceleration cannot support Sally's argument that the statute of limitations bars foreclosure as a matter of law.

Further, the summary judgment evidence demonstrates that more recently, in December 2023, Chase rescinded all Loan accelerations within the prior four years. As mentioned, after Chase served the 2020 Acceleration Warning, on February 27, 2020, Chase accelerated maturity of the Note and scheduled the Property for foreclosure. (Dkt. 41-11). However, the Property was not sold on the scheduled sale date. Chase then sent Sally three additional acceleration notices on December 10, 2021; August 22, 2022; and January 30, 2023. (*See* Dkts. 41-12, 41-13, 41-14). The Property was not sold on any of these rescheduled dates either. On December 19, 2023, Chase served via first class and certified mail a rescission of acceleration notice on Sally, advising her that Chase rescinded all accelerations that occurred within four years prior to its service. (Dkt. 41-15, at 3, 6–7). Through this notice, Chase rescinded the February 27, 2020, acceleration and all accelerations through December 19, 2023, restoring the Loan's maturity date to May 1, 2033. (*See* Dkt. 41-3, § 3); Tex. Civ. Prac. & Rem. Code § 16.038(b)-(c). This notice further debunks Sally's claim that the statute of limitation has run on Chase's ability to foreclose on the Property.

In response, Sally does not dispute that she received the 2019 and 2020 Acceleration Warning letters; in fact, she attached them to her response to Chase's motion for summary judgment. (*See* Dkts. 45-2; 45-3). However, Sally argues that the letters do not evince an unequivocal intention to abandon. (Resp., Dkt. 45, at 4–6 (citing *Sexton v Deutsche Bank Nat'l Co. For GSAMP Tr. 2007-FM2, Mortg. Pass-Through Certificates, Series 2007-FM2*, 731 F. App'x 302, 305 (5th Cir. 2008))). As such, Sally asserts that "[w]hether a lender has abandoned an acceleration is generally a question of fact," and such a fact issue exists here. (*Id.* (citing *Residential Credit Sols., Inc. v. Burg*, No. 01-15-00067-CV, 2016 WL 3162205, at *3 (Tex. App.–Houston [1st Dist.] June 2. 2016, no pet.))). Sally points to several statements within the 2019 and 2020 Acceleration Warnings to support her argument that it is unclear whether these notices constitute abandonment of the prior 2018 acceleration. Sally, instead, argues that that these statements demonstrate that Chase was still acting consistently with the past acceleration. (Resp., Dkt. 45, at 6). The Court finds these arguments unavailing.

For example, Sally notes that the notices were titled as "Acceleration Warning (Notice of Intent to Foreclose)" rather than a "Notice of Intent to Accelerate." (*Id.* at 4). However, Sally has presented no case law to suggest that specific language is needed in a notice's title to properly put a party on notice about abandonment of a prior acceleration. Even if specific language is needed, the 2019 and 2020 notices were titled, in part, "Acceleration Warning[s]"—a clear indication that the Loan was no longer accelerated but could be in the future. Next, Sally points to language in the notices stating, "All . . . .advances are still valid and will need to be paid under the terms of the loan documents." (*Id.* at 4–5). But the word "advances" does not refer to the accelerated amount; it refers to payments authorized by the loan documents or applicable law that are separate from the mortgage amount. (*See* Dkt. 41-7, ¶ 2). Third, Sally emphasizes Chase's statement that, if Sally failed to cure the default, Chase would, in addition to accelerating the maturity of the Note, "Begin

18

foreclosure proceedings and sell the property." (Resp., Dkt. 41, at 5). However, this statement is simply a description of an action that Chase would take in the future if Sally failed to cure the default; as such, it is consistent with a warning of future acceleration. Last, Sally relies on language in the notices that state that Chase is "not required to accept less than the full amount owed. If we receive less than the full amount owed, we may apply it to your loan without waiving any default or waiving our right to accelerate the loan and begin foreclosure proceedings." (*Id.*). This quoted section refers to "the full amount" that is past due as stated in the notice, not the full amount of the accelerated loan. (*See* Dkt. 41-7, ¶ 8). In fact, this quoted language supports Chase's argument: It shows an example of how Chase warned Sally that failure to pay the past amount due would lead to future acceleration.

On the whole, the Court finds that the 2019 and 2020 Acceleration Warnings evince a clear abandonment of the prior, 2018 acceleration because they contain both (1) a demand for only past due amount, not full accelerated amount of loan, and (2) a warning that failure to pay this amount would lead to acceleration. *See, e.g.*, *Pitts*, 583 S.W.3d at 264. In addition, Chase's 2023 statutory recission notice also proves that Chase rescinded the February 17, 2020, acceleration and every acceleration that occurred within the four years before November 19, 2023. While abandonment of a prior acceleration is generally an issue of fact, *see Residential Credit Sols.*, 2016 WL 3162205, at \*3, abandonment may be determined as a matter of law if the facts evincing abandonment are clearly established, *see Bracken v. Wells Fargo Bank, N.A.*, No. 05-16-01334-CV, 2018 WL1026268, at \*5 (Tex. App.—Dallas Feb. 23, 2018, pet. denied). Here, the summary judgment evidence proves that the statute of limitations on foreclosure did not expire following any Loan acceleration. Consequently, there is no genuine dispute of material fact on Sally's sole remaining claim for declaratory relief. The Court will accordingly grant Chase summary judgment on this claim.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Benny's motion for leave to join, file complaints, and objections to Chase's motion for summary judgment, (Dkt. 49), is **DENIED**.

**IT IS FURTHER ORDERED** that Chase's motion to strike Beny's plea in intervention, (Dkt. 48), and Chase's motion to strike Benny's pleadings at Docket Entries 55–59, (Dkt. 60), are **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall **STRIKE** Benny's plea in intervention, (Dkt. 47), and Benny's pleadings at Docket Entries 55, 56, 57, 58, 59, 61, and 63 from the docket.

**IT IS FINALLY ORDERED** that Chase's motion for summary judgment, (Dkt. 41), is **GRANTED**. Chase is entitled to summary judgment on Sally's sole remaining claim against it.

The Court will enter final judgment by separate order.

**SIGNED** on November 5, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE